**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| Internal Medicine Nephrology,<br>Incorporated, an<br>Indiana Corporation, | ) <br> ) <br> ) <br> ) | |
| **Plaintiff,** | ) <br> ) | |
| v. | ) <br> ) | Case No. 2-18-cv-506 |
| Bio-Medical Applications of Indiana, Inc.<br>d/b/a Fresenius Medical Care Terre Haute<br>South a/k/a Fresenius Medical Care Wabash<br>Valley, a Delaware Corporation, | ) <br> ) <br> ) <br> ) <br> ) | **COMPLAINT** |
| Renal Care Group Terre Haute, LLC d/b/a<br>Fresenius Medical Care Terre Haute North,<br>a Delaware limited liability company, | ) <br> ) <br> ) <br> ) | |
| Fresenius Medical Care Paris, LLC d/b/a<br>Fresenius Kidney Care Paris Community, a<br>Delaware limited liability company, | ) <br> ) <br> ) <br> ) | |
| Fresenius Medical Care of Illinois, LLC, a<br>Delaware limited liability company, | ) <br> ) <br> ) | |
| National Medical Care, Inc., a Delaware<br>Corporation, | ) <br> ) <br> ) | |
| Fresenius USA Manufacturing, Inc. d/b/a<br>Fresenius Medical Care North America,<br>a Delaware corporation, | ) <br> ) <br> ) <br> ) | |
| Fresenius Medical Care Holdings, Inc.<br>d/b/a Fresenius Medical Care North<br>America, a Delaware corporation, and | ) <br> ) <br> ) <br> ) | |
| Michael Graves, an individual, | ) <br> ) | |
| **Defendants.** | ) <br> ) | |

## COMPLAINT

Plaintiff Internal Medicine Nephrology, Inc. files this Complaint against Fresenius Bio-Medical Applications of Indiana, Inc. d/b/a Fresenius Medical Care Terre Haute South a/k/a Fresenius Medical Care Wabash Valley; Renal Care Group Terre Haute, LLC d/b/a Fresenius Medical Care Terre Haute North; Fresenius Medical Care Paris, LLC d/b/a Fresenius Kidney Care Paris Community; Fresenius Medical Care of Illinois, LLC; National Medical Care, Inc.; Fresenius USA Manufacturing, Inc. d/b/a Fresenius Medical Care North America; Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America; and Michael Graves, Regional Vice-President of one or more of Defendant Fresenius' entities.

### Nature of Action

1.      This is an action under section 2 of the Sherman Act, 15 U.S.C. §2, and sections 1 and 2 of Chapter 2, Title 24 of the Indiana Code, I.C. 24 §§1-2, against Defendants for engaging in unlawful attempts to monopolize or to monopolize the market for kidney dialysis in Terre Haute, Indiana and state law claims for breach of contract, implied contract, defamation and unjust enrichment.

### The Parties

2.      Internal Medicine Nephrology, Inc. ("IMN") is a for-profit corporation organized and existing under the laws of the State of Indiana with its principal place of business in Terre Haute, Indiana.

3.      Bio-Medical Applications of Indiana, Inc. d/b/a Fresenius Medical Care Terre Haute South a/k/a Fresenius Medical Care Wabash Valley ("BMA-IN") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Waltham, Massachusetts.

1

4.      Renal Care Group Terre Haute, LLC d/b/a Fresenius Medical Care Terre Haute North ("RCG") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Waltham, Massachusetts.

5.      Fresenius Medical Care Paris, LLC d/b/a Fresenius Kidney Care Paris Community ("FMC-Paris") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Waltham, Massachusetts.

6.      Fresenius Medical Care of Illinois, LLC ("FMC-IL") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Waltham, Massachusetts.  Upon information and belief, FMC-IL is the corporate parent of FMC-Paris.

7.      National Medical Care, Inc. ("NMC") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Waltham, Massachusetts. Upon information and belief, NMC is the true corporate parent of BMA-IN, RCG and FMC-IL.

8.      Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America ("FMCH") is a corporation organized and existing under the laws of the State of New York with its principal place of business in Waltham, Massachusetts.  Upon information and belief, FMCH is the corporate parent of NMC.

9.      Fresenius USA Manufacturing, Inc. d/b/a Fresenius Medical Care North America ("FM-USA") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Waltham, Massachusetts.  Upon information and belief, FM-USA is a corporate affiliate of FMCH.

10.     Upon information and belief, Michael Graves ("Graves") is a resident of Indiana and at all times relevant hereto was Regional Vice President for one or more of Defendant Fresenius' corporate entities.

## Jurisdiction and Venue

11.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Section 2 of the Sherman Act, 15 U.S.C. § 2, and 28 U.S.C. §§ 1331 and 1337.  This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367 in that IMN's state law claims form part of the same case or controversy as its federal claims under Article III of the United State Constitution.

12.     This Court has personal jurisdiction over each Defendant because each Defendant has numerous contacts with Indiana, including actively operating or providing services to the owner of a dialysis business in Indiana, including entering into contracts and offers to provide goods and services in this District.  This cause of action arises from Defendants' ongoing business activities and conduct of commerce.

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (d) in that a substantial part of the events giving rise to the claims occurred in this District and that each Defendant has contacts in this District.

## Factual Allegations

### *Delivery of Dialysis Care*

14.     Dialysis involves the removal of certain toxins from the blood by use of a dialyzer or dialysis machine and is common in patients with kidney disease.  Absent a kidney transplant, dialysis patients generally receive dialysis treatment for the rest of their lives.  Nephrologists are the medical specialists who treat patients with kidney disease.  When a nephrologist's patient

requires dialysis services, the nephrologist refers the patient to a dialysis facility operated by a dialysis provider.

15.     Medicare covers dialysis treatment for all patients for whom it is medically necessary. *See generally* Cong. Research Serv., *Medicare Coverage of End-Stage Renal Disease (ESRD)*, 9-10 (Aug. 16, 2018), *available at* https://fas.org/sgp/crs/misc/R45290.pdf (last accessed Nov. 12, 2018) (discussing Medicare coverage of dialysis treatment). Therefore, Medicare's conditions for coverage are *de facto* rules for all dialysis providers, including Fresenius, that treat Medicare dialysis patients.  One Medicare requirement is that all dialysis facilities have a medical director–one or more nephrologists who oversee the delivery and quality of care provided at the dialysis facility.  42 C.F.R. §494.150; *see also* Centers for Medicare and Medicaid Services*, State Operations Manual, Appendix H*, § 405.2161, *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/som107ap_h_esrd.pdf (last accessed Nov.  6, 2018). Each dialysis facility that treats Medicare patients must have a medical director as a condition to participation as a Medicare approved provider of dialysis services because a medical director is often a nephrologist whose patients use the dialysis facility, the nephrologist is familiar with the care provided at the facility.

16.     Usually, physicians serve as the "gatekeeper" for patients, advising and educating their patients as to what healthcare purchases they might make and when and where the patients might make them.  This includes dialysis services.  Therefore, the relationship between dialysis providers and nephrologists who serve as medical directors is symbiotic in that each patient needs to be educated by his or her physician (who may also serve as a medical director for a facility) as to the patient's choice of a location to receive dialysis treatments as well as a provider to provide the dialysis treatments under the mandatory auspices of a medical director for the dialysis facility.

4

17.     The propriety of the dialysis provider-medical director relationship is protected by federal law.  The "Patient Freedom of Choice" provision of the Social Security Act provides that any Medicare patient may obtain dialysis services from any dialysis provider qualified to participate in the Medicare program if the dialysis provider undertakes to provide the patients with dialysis services.  *See* 42 U.S.C. § 1395a(a).  The regulatory safe harbors to the Anti-Kickback Statute require, among other things, that the aggregate compensation paid by dialysis providers to their medical directors not be determined in a manner that takes into account the volume or value of any referrals or business otherwise generated between the parties for which payment may be made in whole or in part under Medicare.  *See* 42 C.F.R. § 1001.952(d)(5).  In layman's terms, neither a dialysis provider nor a nephrologist can dictate which dialysis facility a patient must use and a dialysis provider cannot financially reward a patient or a physician for a specific referral.

18.     In the United States, two of the largest dialysis providers are Fresenius and DaVita, Inc. and its affiliates ("DaVita").  Neuman, M.E., *The largest dialysis providers in 2017: More jump on integrated care bandwagon* (July 16, 2017), Healio.com https://www.healio.com/nephrology/practice-management/news/online/{d894132b-b577-435e-8dec-401cd89d1b1e}/the-largest-dialysis-providers-in-2017-more-jump-on-integrated-care-bandwagon.

19.     Because dialysis is a time consuming and repetitive endeavor, especially for outpatient dialysis, most patients who receive dialysis in the outpatient setting receive it several times a week for 3–4 hours per visit.

20.     Recent advancements in dialysis technology have increased the ability of dialysis patients to perform their own dialysis treatments at home.  Home dialysis is similar but not the same process as outpatient dialysis (due to technical differences such as some home patients

dialyze using peritoneal dialysis on a 24 hour basis) and requires training at a provider operated home dialysis clinic.

21.     By comparison, inpatient dialysis (a/k/a acute dialysis) occurs at a hospital or in-patient facility for hospital patients who need dialysis while hospitalized. For acute dialysis, the attending or treating nephrologist may have admitting privileges to the hospital depending on the type of dialysis treatment.  While in-patient dialysis therefore relies upon a more "captive" pool of patients, those receiving in home dialysis must receive training at a dialysis provider facility. Outpatient dialysis, however, is performed at a dialysis clinic.  It is therefore understandable that patients receiving outpatient dialysis prefer a dialysis clinic that is geographically convenient and offers convenient times to schedule dialysis.

22.     In sum, dialysis patients can receive treatments through three modalities: chronic (outpatient), at home, or acute (inpatient at a hospital).

23.     The time consuming and repetitive nature of kidney dialysis means that, as a practical matter, unless patients absolutely have to, they will not drive more than 30–45 minutes for dialysis.[1]

24.     Dialysis services provided by companies like Fresenius and DaVita do not vary in any meaningful or significant manner and are reasonable substitutes for one another.

### Dialysis Care in Terre Haute

25.     According to 2010 census data, by population Terre Haute, Indiana is the 12th largest city in Indiana with a population of 60,785.  *See* U.S. Census Bureau, *American Fact*

---

[1] *See* **Exhibit B at 60 (**representing that dialysis facilities more than "45 minutes away" from the Paris Facility do not provide dialysis patients "reasonable access to dialysis services").

*Finder*, https://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml (last accessed Nov. 6, 2018).

26.     Historically, dialysis providers like DaVita and Fresenius have entered local markets like Terre Haute by buying existing dialysis facilities from physician owners and the provider will then engage the services of the physicians to serve as medical directors under long term medical director agreements.  This accomplishes the dialysis providers' need to have a medical director to oversee and supervise the facility while also securing medical directors for the facility. Most often, the physicians who serve as medical directors are also the treating nephrologists of the dialysis patients as physicians.

27.     On or before October 2017, Fresenius was the only provider of dialysis services within a 30–45 minute drive of Terre Haute, Indiana.

28.     On or before October 2017, Fresenius operated 6 dialysis facilities in or around Terre Haute, Indiana for which IMN, or one of its physicians, served as medical director (collectively "Terre Haute Facilities"):

    a.      Terre Haute North
           351 Maiden Lane
           Terre Haute, IN 47804

    b.      Terre Haute Regional Hospital
           3901 S 7th Street
           Terre Haute, IN 47802

    c.      Union Hospital
           1606 N 7th Street
           Terre Haute, IN 47804

    d.      Wabash Valley
           4001 Wabash Avenue
           Terre Haute, IN 47803

    e.      Terre Haute South[2]

---

[2] For ease of reference, this facility is referred to as "FKC Terre Haute South".

315 E Springhill Drive
Terre Haute, IN 47802

f.      Vigo County[3]
1705 E Industrial Drive
Terre Haute, Indiana 47802

29.     Fresenius entered the dialysis market in and around Terre Haute through the acquisition of existing dialysis facilities from entities owned by physicians affiliated with IMN through a series of acquisitions starting in 2006.

30.     The kidney dialysis services industry is competitive with high barriers to entry which help facilitate the illegal use of monopoly power or attempts to monopolize.

31.     There are substantial barriers that preclude, reduce or make more difficult entry into the provision of kidney dialysis services.  A new entrant would face costly expenses to start-up a new dialysis facility, including costs associated with construction, equipment, labor, and medical directors.  The barriers to entry are such that only established and existing well-capitalized national dialysis providers like DaVita or Fresenius, would be able to open a new dialysis facility in or around Terre Haute or acquire existing dialysis facilities.

32.     Because demand for kidney dialysis is inelastic (meaning there are no close, reasonable substitutes), patients have nowhere to turn for alternative, cheaper medical services of the same nature or quality.  Since its entry to Terre Haute and the immediately surrounding area, Fresenius has had significant market power in the provision of kidney dialysis services in that it could control prices by controlling supply, and/or excluding competition with the effect of not keeping historical costs in check which negatively impact reimbursement rates paid by payors, including Medicare.

---

[3] For ease of reference, this facility is referred to erein as "FKC Vigo County".

33.     Starting in or about October 2017, DaVita opened dialysis facilities in Terre Haute, Indiana, Brazil, Indiana, and Sullivan, Indiana ("DaVita Facilities").

34.     The relevant market is therefore the provision of dialysis services within a 30 – 45 minute travel distance of Terre Haute.

### IMN

35.     IMN is a medical practice that provides nephrology medical services, including kidney-related medical services to patients in the Terre Haute, Indiana area.  IMN is operated by Dr. Manish Gera and Dr. Raj Jeevan, both Indiana-licensed physicians who actively practice in the market and specialize in the treatment of kidney disease and are experienced in the medical administration of dialysis facilities.  Dr. Gera and Dr. Jeevan meet the requirements to serve as medical directors under the ESRD conditions for coverage contained in 42 C.F.R §494.150.

### Fresenius

36.     Fresenius, by itself and through its affiliates, owns and operates dialysis facilities in and around Terre Haute, Indiana, including dialysis facilities at issue in this matter: outpatient and/or home dialysis Fresenius Kidney Care dialysis facilities at 351 Maiden Lane, Terre Haute, Indiana 47804 ("FKC Terre Haute North"); 4001 Wabash Avenue, Terre Haute, Indiana 47803 ("FKC Wabash Valley Home"); and hospital inpatient facilities at Union Hospital, 1606 North 7th Street, Terre Haute, Indiana 47804 and Terre Haute Regional Hospital, 3901 South 7th Street, Terre Haute, Indiana 47802 (collectively, the "Inpatient Services Programs").  FKC Terre Haute North, FKC Wabash Valley Home and the Inpatient Services Programs are collectively referred to as "Terminated Facilities".

*The Medical Director Agreements*

37.     Physicians who practice with IMN were instrumental in establishing the Terre Haute Facilities with Fresenius.

38.     On August 1, 2006, IMN became the medical director of the FKC Terre Haute North and FKC Wabash Valley Home facilities pursuant to a Medical Director Agreement between BMA-IN and IMN (the "2006 MDA").  The 2006 MDA was initially for a ten year term and contained an evergreen provision under which it would automatically renew every two years.  A copy of the 2006 MDA, as amended, is in the possession of Defendants.

39.     On June 1, 2009, IMN became the medical director of the Inpatient Services Programs pursuant to a separate Medical Director Agreement between BMA-IN and IMN (the "2009 MDA").  A copy of the 2009 MDA, as amended, is in the possession of Defendants.

40.     On or around August 1, 2012, BMA-IN and IMN amended the terms of the 2006 MDA to incorporate the 2009 MDA, such that the 2012 amendment encompassed and governed the medical director relationships for the Terminated Facilities, including term and renewal provisions.[4]  A copy of the 2012 amendment, as well the other amendments to the 2006 MDA and 2009 MDA, are in the possession of Defendants.  BMA-IN and IMN also extended the term of IMN's medical directorships at the four facilities through July 31, 2018.  The 2006 MDA, 2009 MDA and 2012 amendment are collectively referred to as "2006/2009 MDAs, as amended".

41.     IMN also currently serves as the medical director of dialysis facilities known as FKC Terre Haute South and FKC Vigo County pursuant to one or more separate medical director agreements not at issue in this lawsuit.

---

[4] *See* 2006/2009 MDAs, as amended, pages 74-96.

42.     The 2006/2009 MDAs, as amended, mandated that IMN could <u>not</u> be required to admit patients to the Terminated Facilities, was <u>not</u> required to prescribe, utilize or purchase any items or services from the Terminated Facilities, and was <u>not</u> restricted from admitting individuals to any other dialysis facilities.  In simple terms, the 2006/2009 MDAs, as amended, preserve a patient's right to choose his or her dialysis provider and/or dialysis facility.

43.     Upon expiration of the 2006/2009 MDAs, as amended, IMN and its employee physicians, may only render services as treating physicians (i.e. as primary care physicians for nephrology patients) and they are precluded from serving as medical directors for competing dialysis facilities within a 25 mile radius of any of the Terminated Facilities.  This non-compete provision precludes IMN and its employee physicians from seeking to provide services as medical directors, a mandatory requirement for a dialysis facility, in the relevant market where Fresenius has significant market power and constitutes an unreasonable restraint of trade intended to preserve Fresenius' market power in the relevant market.

44.     In a letter dated May 1, 2018, Fresenius' Regional Vice President, Defendant Graves, provided notice of BMA-IN's intent not to renew the Medical Director Agreement such that the 2006/2009 MDAs, as amended, would expire on July 31, 2018 for the Terminated Facilities and Fresenius would be in contact to discuss possibly renewing the agreements.  A copy of the letter is attached hereto as **Exhibit A**.  Despite the indication otherwise in **Exhibit A,** Fresenius never contacted IMN and there were never any discussions of renewing the 2006/2009 MDAs, as amended.  In other words, despite misleading and untruthful statements, Fresenius made the decision to terminate IMN as medical director of the Terminated Facilities.

11

### *The Paris, Illinois Dialysis Facility & Certificate of Need Application*

45.     In or around 2006, Dr. Jeevan proposed to Fresenius that Fresenius and IMN open a dialysis facility at Paris Community Hospital in Paris, Illinois (approximately 45 minute driving distance from Terre Haute, Indiana) to be operated by Fresenius with IMN as the medical director (the "Paris Facility").  IMN and Fresenius held discussions about the possible Paris Facility on and off for several years, via emails, personal meetings and telephone calls between Defendant Graves and Dr. Jeevan and Dr. Gera.  However, the Paris Facility did not materialize at that time.

46.     It was not until DaVita approached Paris Community Hospital, in or around 2016, about opening a dialysis facility at the Paris, IL hospital that Fresenius became seriously motivated. Indeed, DaVita also approached and asked IMN to serve as medical director for DaVita's proposed facility in Paris, Illinois.[5]

47.     Upon learning of DaVita's proposal, Defendant Graves requested that Dr. Jeevan convince Paris Community Hospital's chief executive officer not only to open a dialysis facility, but to choose Fresenius to operate the dialysis clinic, instead of DaVita.  In exchange, Fresenius-through Defendant Graves-promised Dr. Jeevan that IMN would be given the medical director agreement for the Paris Facility.  In or around 2016, Fresenius, IMN and Paris Community Hospital agreed to move forward with Fresenius' and IMN's proposal for the Paris Facility.

48.     Prior to opening and operating a dialysis facility at Paris Community Hospital, it was necessary for Fresenius to obtain a permit from the Illinois Health Facilities and Services Review Board (the "IHFSR Board") under Illinois' certificate of need program ("CON"). Obtaining a CON permit is a rigorous process and Fresenius was required to submit specific

---

[5] The Paris Facility is located outside of the 25 mile "noncompete" radius of the Terminated Facilities and the Terre Haute Facilities where IMN still serves as medical director. *See* ¶41, *infra*.

information to the IHFSR Board, including data that substantiated the need for dialysis services in the area, a "physician referral letter" from a physician who anticipated referring to the new dialysis facility, examples of quality care at nearby Fresenius Clinics, cost and funding projections, and an economic feasibility analysis.

49.     Beginning in February 2016, IMN dutifully assisted Fresenius, including among other things, gathering this data and in September 2016 providing Fresenius with a physician referral letter from Dr. Gera at the request of Defendant Graves which was attached to Fresenius' application for a CON permit to operate the Paris Facility (the "CON Application").  A copy of the CON Application is attached hereto as **Exhibit B**.

50.     On several occasions, Fresenius-through Defendant Graves-repeated the promise to Dr. Gera and Dr. Jeevan that IMN would be engaged as medical director of the Paris Facility in exchange for IMN's support of Fresenius, including gathering data, providing the physician referral letter, and otherwise assisting Fresenius in developing its plan for the Paris Facility.

51.     On October 7, 2016, submitted the CON Application.  In it, Fresenius specifically refers to the quality of the Terre Haute Facilities, including the Terminated Facilities, as "excellent," relied upon the physician referral letter and quality data supplied by IMN, and identified Dr. Gera of IMN as medical director.  *See* **Exhibit B** at 62, 69-72, and 82.  Upon information and belief, naming a medical director in the CON Application is mandatory and absent that Defendants would not have been able to submit the completed CON Application.

52.     The IHFSR Board approved Fresenius' CON Application on March 14, 2017.  On March 14, 2017, Defendant Graves sent Dr. Gera an email "to inform all of you that <u>our project for the clinic in Paris IL passed unanimously as expected</u>."  **Exhibit C** (emphasis added).

53.     On April 9, 2018, Defendant Graves sent Dr. Gera and Dr. Jeevan a "final" contract, "ready for signature" for IMN to become the medical director of the Paris Facility (the "Paris MDA"). A copy of the transmittal email is attached as **Exhibit D**.

### DaVita Opens the DaVita Facilities in and around Terre Haute

54.     In or around October 2017, DaVita opened its first dialysis facilities in and around Terre Haute.  Upon information and belief, the DaVita facility in Terre Haute is the first non-Fresenius-operated outpatient dialysis facility in Vigo County, Indiana since Fresenius entered the market in 2006.

55.     A certain number of patients chose to switch from using Fresenius as their dialysis provider to using the DaVita Facilities as their dialysis provider.  IMN and its physicians understand that for most patients the choice to receive dialysis from DaVita Facilities, specifically DaVita's Terre Haute Facility, is in most instances geographically more convenient and offered better scheduling availability.

56.     Starting in early 2018 and continuing until after Fresenius terminated IMN as medical director for the Terminated Facilities, Fresenius' management team led by Defendant Graves:

a.     Repeatedly insisted that Dr. Gera and Dr. Jeevan should interfere with patient choice by not allowing their nephrology patients to transfer to the DaVita facilities;

b.     Repeatedly threatened IMN and its employee physicians that "IMN needs Fresenius more than Fresenius needs IMN";

c.     Ordered Fresenius employees and staff at its facilities to tell patients that IMN's physicians were "liars" in an effort to prevent patients from transferring to DaVita; and

d.     Coerced Fresenius employees and staff to engage in consistent and targeted acts intended to coerce patients to remain at Fresenius' Terre Haute Facilities or to coerce patients who had transferred to DaVita facilities to

return to Fresenius' Terre Haute Facilities, including specifically FKC Terre Haute North.

### *Fallout of the Non-Renewal of the 2006/2009 MDAs, as amended*

57.     On multiple occasions starting before or around May 2018 and continuing through July 31, 2018, Defendant Graves intentionally misrepresented to Dr. Gera and Dr. Jeevan that Fresenius would enter a "global" medical director agreement to replace the 2006/2009 MDAs, as amended for the Terminated Facilities.

58.     In this same period, Defendant Graves, and/or members of his management team, made statements to Dr. Gera and Dr. Jeevan that Fresenius terminated the 2006/2009 MDAs, as amended, because IMN would not interfere with patient choice and IMN had developed "too close" of a "relationship" with DaVita.  The so-called "relationship", however, is actually with the only other nephrology practice group in Terre Haute who serves as medical director of the DaVita Facilities.  The relationship is to provide back-office support for billing and payment processing to the other nephrology practice and on-call and holiday coverage as well as inpatient coverage as is necessary.  IMN disclosed this relationship to Fresenius and Defendant Graves at its outset in sometime in early 2017.

59.     On or about July 31, 2018, Dr. Gera and Dr. Jeevan attended a meeting with Defendant Graves and other members of his management team who informed Dr. Gera and Dr. Jeevan that Fresenius would not be renewing the medical director agreements for the Terminated Facilities and that it would not enter into the Paris MDA with IMN.

60.     On August 8, 2018, Defendant Graves sent a letter to dialysis patients of FKC Terre Haute North and FKC Terre Haute South informing them that FKC Terre Haute North had a new medical director.  Upon information and belief, there is no reason to send such a letter to patients

at FKC Terre Haute South except to discredit IMN and its physicians and harm their reputation. A copy of the letter is attached hereto as **Exhibit E**.

61.     Upon information and belief, Fresenius sought out and entered an interim medical director agreement with a nephrology practice group from Indianapolis, Indiana (at least a 60 minute drive from Terre Haute) with whom Fresenius had a preexisting relationship and a tacit understanding that the new medical director would not refer patients in Terre Haute to competing dialysis facilities. Although none of the patients at the Terminated Facilities were being treated by nephrologists of the Indianapolis practice group as their treating nephrologists, upon information and belief Fresenius began to solicit IMN patients away from IMN and to the new medical director.

62.     Upon information and belief, Fresenius and Defendant Graves interfered with IMN's physician-patient relationship by coercing patient choice and in doing so evidencing their resolve to financially award its new medical director of the Terminated Facilities for not referring patients to the DaVita Facilities, specifically the DaVita Facility in Terre Haute.

63.     Upon information and belief, Defendant Graves and/or members of his management team openly told Fresenius employees, staff, and others in the general community that IMN had been terminated as medical director at the Terminated Facilities because:

    a.     IMN and its physicians would not interfere with a patient's choice as to where to receive dialysis;

    b.     IMN and its physicians would not stop patients from transferring to DaVita's dialysis clinic in Terre Haute;

    c.     IMN and its physicians refused to coerce patients who had transferred to a DaVita facility to transfer back to Fresenius;

    d.     IMN was terminated for "quality";

    e.     Engaged in a course of conduct to discredit, malign and undermine IMN's physician-patient relationships; and

      f.      Acknowledged making materially false statements to members of the general public and medical community that IMN's physicians had been terminated because of poor "quality".

64.      Pursuant to the 2006/2009 MDAs, as amended, while such agreements were in effect, IMN met monthly with Fresenius, Defendant Graves and members of his management team to review quality metrics for each of the Terre Haute Facilities, including the Terminated Facilities.

65.      As of October 2016, FMC-Paris and FMCH, by and through their designated Assistant Treasurers Bryan Mello and Maria Notar, who upon information and belief relied upon Defendant Graves to prepare the Paris Facility's CON Application, certified under oath to IHFSR that "[Q]uality at the Fresenius clinics where many patients in the area now go is excellent".  *See* **Exhibit B** at 62.  It is without dispute that the clinics referred to and certified as having "excellent" quality to the IHFSR Board are the Terre Haute Facilities, including the Terminated Facilities as referenced in the Physician Referral Letter IMN submitted in support of Fresenius' CON Application for the Paris Facility. *See* **Exhibit B** at 69-72.

66.      Between October 2016 and Fresenius' termination of the 2006/2009 MDAs, as amended, Fresenius did not provide any formal or written notice to IMN of quality issues at the Terminated Facilities.

67.      Indeed, Fresenius' internal quality metrics for the two busiest Terre Haute Facilities, including one of the Terminated Facilities, show on average quality at the Terre Haute Facilities to be better than the Fresenius dialysis clinics operated by Defendants' new medical director from Indianapolis, Indiana. A copy of the quality metrics is in Defendants' possession.

68.      From data available at https://www.medicare.gov/dialysisfacilitycompare/# for the busiest two Terre Haute Facilities, including one of the Terminated Facilities, upon information and belief average quality at those facilities is better than Fresenius dialysis clinics with a comparable number of stations operated by Defendants' new medical director.

17

69.     Upon information and belief, in late May 2018 Fresenius-through Defendant Graves-instructed staff at the Terre Haute Facilities, including the Terminated Facilities, to collect quality data as part of an *ex post facto* justification of the decision to terminate the 2006/2009 MDAs, as amended.  Once the quality data had been gathered *ex post facto,* Defendant Graves, and members of his management team skewed the quality data so as to present an unfavorable view of IMN to the hospitals associated with the Inpatient Facilities.

70.     By August 2018, Fresenius had commenced an internal compliance investigation into allegations of patent coercion by Defendant Graves and his management team.  However, the investigation came to an unceremonious conclusion after Fresenius employees and staff expressed fear of retaliation by Defendant Graves and/or members of his management team.  At least one Fresenius employee described full and honest cooperation in the internal compliance investigation to be "career suicide." Simply put, Fresenius employees feared retaliation by Defendant Graves and members of his management team if they were full and forthright in the internal investigation.

## COUNT I
### *Monopolization and Attempted Monopolization in Violation of §2 of the Sherman Act (15 U.S.C. § 2) (Fresenius Defendants)*

71.     IMN repeats and reasserts all allegations contained in Paragraphs 1 through 70.

72.     Given Fresenius' established presence in and around Terre Haute at multiple locations in Terre Haute, and DaVita's recent presence in the area, Fresenius has significant market power in the relevant market.

73.     Fresenius engaged in an anticompetitive scheme and exclusionary conduct with the intent to monopolize or attempt to monopolize dialysis services in relevant market so as to enhance, maintain and increase its market power in violation of section 2 of the Sherman Act by:

   a.     Terminating IMN as medical director of the Terminated Facilities for not dissuading patients from transferring to DaVita;

    b.      Terminating IMN on the "pretext" of "quality" while the actual reason was IMN's refusal to interfere with patient choice;

    c.      Terminating IMN due to its refusal to coerce patients who had transferred to a DaVita facility to transfer back to Fresenius;

    d.      Representing to IMN the 2006/2009 MDAs, as amended, were being terminated and reneging its promise to enter into the Paris MDA because IMN allows patients to choose their treatment options for kidney dialysis; and

    e.      Engaging a new medical director who, upon information and belief, will not refer dialysis patients to DaVita Facilities for the purpose of excluding DaVita from the relevant market and limiting and harming competition by ultimately denying dialysis patients in the relevant market competitive choices for their dialysis treatments.

74.    Fresenius' termination of IMN as medical director of the Terminated Facilities was a "pretext" with the specific intent to exclude DaVita from the relevant market, as well as any nephrologists who refer patients to DaVita Facilities.

75.    IMN's refusal to coerce patients to exclusively use Fresenius's facilities, upon information and belief, caused Fresenius to seek a relationship with a medical director who would be complicit in Fresenius' anticompetitive scheme and exclusionary conduct.

76.    There is a causal connection between Fresenius' anticompetitive scheme and harm to IMN. Upon information and belief, Fresenius terminated the 2006/2009 MDAs, as amended, began to solicit patients away from IMN to Fresenius' new medical director, and conjured up and manipulated quality data *ex post facto* to camouflage its decision. As such, IMN's injury is the direct and intentional result of Fresenius' anticompetitive scheme to monopolize or attempt to monopolize the relevant market to the detriment of competition and dialysis patients in and around Terre Haute.

77.    IMN has antitrust standing to assert these claims, both under Article III and under *Associated General Contractors* because IMN, as an agent and/or contractor to Fresenius, was

terminated for refusing to participate in Fresenius' anticompetitive, exclusionary and unlawful scheme. IMN is uniquely and better positioned to pursue its antitrust claims than individual dialysis patients who ultimately suffer antitrust injury flowing from Fresenius' unlawful and improper acts intended to harm competition in the relevant market.

78.     IMN has also suffered antitrust injury of the type the antitrust laws were intended to prevent. IMN's injury directly flows from Fresenius' anticompetitive scheme and is inextricably intertwined with the injury inflicted on those receiving dialysis treatment for whom it provides limited competitive options and the potential negative impact on reimbursement rates paid by health care payors such as Medicare, as a result of historical costs remaining unchecked due to a lack of competition in the market.

79.     IMN competes or poses a competitive threat to Fresenius by virtue of the noncompete provision of 2006/2009 MDAs, as amended, as the ability to provide dialysis services at a facility cannot occur without physicians who prescribe dialysis and a medical director. As such, the injury sought to be prevented is Fresenius' use of its market power to affect IMN's patient base so as to exclude DaVita from the relevant market and prevent IMN from serving as medical director for other dialysis clinics in the relevant market who do or might compete with Fresenius.

80.     IMN's damages can be calculated and verified, without risk of duplicate recoveries or complex damages apportionment. IMN is entitled to an award of treble damages and costs, including reasonable attorneys' fees.

WHEREFORE, IMN respectfully requests that the Court:

i.      Award IMN its actual damages sustained as a result of Defendants' illegal, unlawful and improper actions, trebled as provided in 15 U.S.C. § 15

ii.     Award IMN its costs incurred herein, prejudgment interest, and attorneys' fees; and

iii.    Award such further and/or alternative relief this Court deems proper.

## COUNT II
### *Monopolization and/or Attempted Monopolization in Violation*
### *of Indiana Code § 24-1-2-2 (Fresenius Defendants)*

81.    IMN repeats and reasserts all allegations contained in Paragraphs 1 through 80.

82.    The conduct alleged in this complaint also constitutes a violation of Indiana Code

§24-1-2-2.

83.    Given Fresenius' established presence in and around Terre Haute at multiple

locations in Terre Haute, and DaVita's recent presence in the area, Fresenius has significant market

power in the relevant market.

84.    Fresenius engaged in an anticompetitive scheme and exclusionary conduct with the

intent to monopolize or attempt to monopolize dialysis services in relevant market so as to enhance,

maintain and increase its market power in violation of section 2 of the Sherman Act by:

    a.    Terminating IMN as medical director of the Terminated Facilities for not
dissuading patients from transferring to DaVita;

    b.    Terminating IMN on the "pretext" of "quality" while the actual reason was
IMN's refusal to interfere with patient choice;

    c.    Terminating IMN due to its refusal to coerce patients who had transferred to a
DaVita facility to transfer back to Fresenius;

    d.    Representing to IMN the 2006/2009 MDAs, as amended, were being
terminated and reneging its promise to enter into the Paris MDA because
IMN allows patients to choose their treatment options for kidney dialysis;
and

    e.    Engaging a new medical director who, upon information and belief, will not
refer dialysis patients to DaVita Facilities for the purpose of excluding
DaVita from the relevant market and limiting and harming competition by
ultimately denying dialysis patients in the relevant market competitive
choices for their dialysis treatments.

85.    Fresenius' termination of IMN as medical director of the Terminated Facilities was

a "pretext" with the specific intent to be to exclude DaVita from the relevant market, as well as

any nephrologists who refer patients to DaVita Facilities.

21

86.     IMN's refusal to coerce patients to exclusively use Fresenius's facilities, upon information and belief, caused Fresenius to seek a relationship with a medical director who would be complicit in Fresenius' anticompetitive scheme and exclusionary conduct.

87.     There is a causal connection between Fresenius' anticompetitive scheme and harm to IMN.  Upon information and belief, Fresenius terminated the 2006/2009 MDAs, as amended, began to solicit patients away from IMN to Fresenius' new medical director, and conjured up and manipulated quality data *ex post facto* to camouflage its decision.  As such, IMN's injury is the direct and intentional result of Fresenius' anticompetitive scheme to monopolize or attempt to monopolize the relevant market to the detriment of competition and dialysis patients in and around Terre Haute.

88.     IMN has antitrust standing to assert these claims, both under Article III and under *Associated General Contractors* because IMN, as an agent and/or contractor to Fresenius, was terminated for refusing to participate in Fresenius' anticompetitive, exclusionary and unlawful scheme.  IMN is uniquely and better positioned to pursue its antitrust claims than individual dialysis patients who ultimately suffer antitrust injury flowing from Fresenius' unlawful and improper acts intended to harm competition in the relevant market.

89.     IMN has also suffered antitrust injury of the type the antitrust laws were intended to prevent.  IMN's injury directly flows from Fresenius' anticompetitive scheme and is inextricably intertwined with the injury inflicted on those receiving dialysis treatment for whom it provides limited competitive options and the potential negative impact on reimbursement rates paid by health care payors such as Medicare, as a result of historical costs remaining unchecked due to a lack of competition in the market.

90.     IMN competes or poses a competitive threat to Fresenius by virtue of the noncompete provision of 2006/2009 MDAs, as amended, as the ability to provide dialysis services at a facility cannot occur without physicians who prescribe dialysis and a medical director.  As such, the injury sought to be prevented is Fresenius' use of its market power to affect IMN's patient base so as to exclude DaVita from the relevant market and prevent IMN from serving as medical director for other dialysis clinics in the relevant market who do or might compete with Fresenius.

91.     As a result of Fresenius' violations of Indiana Code § 24-1-2-2, IMN has been substantially injured in its business and property.

WHEREFORE, IMN respectfully requests that the Court:

i.      Award IMN its actual damages sustained as a result of Defendants' illegal, unlawful and improper actions, trebled as provided in Indiana Code § 24 -1-2-2;

ii.     Award IMN its costs incurred herein, prejudgment interest, and attorneys' fees; and

iii.    Award such further and/or alternative relief this Court deems proper.

## COUNT III
### Breach of Contract (Fresenius Defendants)

92.     IMN repeats and reasserts all allegations contained in Paragraphs 1 through 91.

93.     The 2006/2009 MDAs, as amended, were valid and enforceable contracts between Fresenius and IMN.

94.     As set forth herein, Fresenius' conduct constitutes a material breach of the 2006/2009 MDAs, as amended.  By way of example only and not by limitation, Fresenius, through its designated agent and representative Defendant Graves, demanded IMN and its physicians coerce patients to choose Fresenius as their dialysis provider in direct contravention of the terms of the 2006/2009 MDAs, as amended.  As such, IMN was required to prescribe, utilize and purchase items and services from the Terminated Facilities, and was restricted from admitting

23

individuals to other dialysis facilities.  In simple terms, Fresenius engaged in a course of conduct to coerce patient choice and materially breached the 2006/2009 MDAs, as amended, which by their terms are intended to prevent any interference with patient choice.

95.     IMN has complied and performed all of its obligations under the 2006/2009 MDAs, as amended, such that Fresenius' material breaches occurred before any alleged or "pretextual" breach upon which Defendants predicate their termination of the 2006/2009 MDAs, as amended.

96.     Fresenius' prior and material breaches have relieved IMN of any obligation to perform duties subsequent to the termination, including but not limited to the noncompete provision of the 2006/2009 MDAs, as amended.

97.     Fresenius' material breaches have caused and continue to cause damages to IMN.

WHEREFORE, IMN respectfully requests that the Court:

i.      Award IMN its actual and exemplary damages sustained as a result of Defendants' breach of contract;

ii.     Enter a declaratory judgment establishing IMN's rights and obligations, including a judicial determination that the noncompete provision of the 2006/2009 MDAs, as amended, is null and void as a result of Fresenius' previous and material breaches of contract and that IMN may enter medical directorships with other dialysis providers in Terre Haute; and

iii.    Award such further and/or alternative relief this Court deems proper.

## COUNT IV
### *Defamation (All Defendants)*

98.     IMN repeats and reasserts all allegations contained in Paragraphs 1 through 97.

99.     Defendants' told IMN's patients that Dr. Gera and Dr. Jeevan are "liars" and told third parties in the medical and general communities that Fresenius terminated the 2006/2009 MDAs, as amended, because of IMN's poor quality.

100.     By way of example only and not by limitation, publishing statements that Dr. Gera and Dr. Jeevan are "liars" speaks to misconduct in the IMN physicians' occupation and suggests that the care IMN was providing was sub-standard, which would be a violation of a physician's duty of care to its patients.

101.     There is no "opinion" privilege to such published statements, as IMN is in a position to know facts about the care IMN provides to its patients and the quality of care at the Terminated Facilities, which "creates the reasonable inference that the opinion is justified by the existence of unexpressed defamatory facts." *See McQueen v. Fayette Cty. Sch. Corp.*, 711 N.E.2d 62, 66 (Ind. Ct. App. 1999) (quotations and citations omitted).

102.     Defendants made statements that tended to harm IMN and its employee phsysicians' reputation by lowering them in the community's estimation and/or deterring third persons from dealing or associating with them.

103.     Defendants' false and defamatory statements constitute an imputation of misconduct in IMN's trade, profession, office or occupation in a way that were naturally and obviously harmful and are defamatory *per se*.

104.     Defendants' false and defamatory statements were false, only subject to a defamatory interpretation, and have caused and continue to cause harm to IMN and its physicians by lowering their professional reputation in the estimation of the medical community and/or general public, and/or have deterred those in medical community and the general public from dealing or associating with them.

105.     IMN and its physicians have been damaged and continue to suffer damages as a result of the false and defamatory statements.

WHEREFORE, IMN respectfully requests that the Court:

DETROIT 39450-1 1480943v2

    i.      Award IMN its actual and exemplary damages sustained as a result of Defendants' false and *per se* defamatory statements;

    ii.     Award IMN its costs incurred herein, prejudgment interest, and attorneys' fees; and

    iii.    Award such further and/or alternative relief this Court deems proper.

### COUNT V
### *Implied/Quasi-Contract under Indiana Common Law (All Defendants)*

106.    IMN repeats and reasserts all allegations contained in Paragraphs 1 through 105.

107.    Defendants offered IMN the Paris MDA in exchange for assisting and supporting Fresenius in the CON Application for the Paris Facility.

108.    Even though the Paris Facility is to be located beyond the 25 "noncompete" radius of the Terre Haute Facilities, including the Terminated Facilities, IMN tirelessly and thoroughly assisted and supported Defendants in their application for the CON for the Paris Facility which was approved on or about March 17, 2017.  Fresenius proudly reported this to IMN calling the Paris Facility "our project."

109.    Defendants' performance was not conditioned upon IMN's performance, quality or continuing status as medical director at the Terre Haute Facilities, including the Terminated Facilities.  As such, there was a meeting of the minds and IMN completely and fully performed its obligations.

110.    Defendants did not perform their obligation and in doing so, materially breached the agreement by not engaging IMN, or one of its physicians, as medical director under the Paris MDA.

111.    Defendants' breach has caused and will cause IMN measurable and substantial damages.

112.    IMN's damages, by way of example and without limitation, can be measured and include lost opportunity, lost profits and revenue for not receiving compensation under the Paris MDA and lost opportunity, lost profits and revenue for IMN's nephrology practice associated with the Paris Facility.

WHEREFORE, IMN respectfully requests that the Court:

i.      Award IMN its actual and exemplary damages sustained as a result of Defendants' breach of the implied/quasi-contract;

ii.     Award IMN its costs incurred herein, prejudgment interest, and attorneys' fees;

iii.    Award IMN damages for the lost opportunity of serving as medical director to the Paris Facility; and

iv.     Award such further and/or alternative relief this Court deems proper.

## COUNT VI
### Unjust Enrichment under Indiana Common Law (All Defendants)

113.    IMN repeats and reasserts all allegations contained in Paragraphs 1 through 112.

114.    IMN tirelessly and thoroughly supported Fresenius and Defendant Graves in Fresenius' application for a CON for the Paris Facility.

115.    In order for Fresenius to submit a CON Application it needed to identify a medical director of the proposed facility.

116.    Fresenius' CON Application relies upon quality data from the Terre Haute Facilities, including the Terminated Facilities, attached a letter of Physician Reference from IMN, and names IMN as medical director for the new facility.

117.    Fresenius and Defendant Graves promised and represented IMN would receive the Paris MDA for the Paris Facility.

118.    On October 30, 2018, the IHFSR Board extended the CON application for the Paris Facility which is now to be completed on or before March 31, 2020.

27

119. Fresenius and Defendant Graves will be enriched as a result.

120. Allowing Defendants to reap the benefits of their wrongs would inequitable and unjust.

121. Defendants' measureable benefit are the revenues from the Paris Facility which can be reasonably measured and substantiated by the financial projections in Defendants' CON Application as well as their internal business models and financial projections.

WHEREFORE, IMN respectfully requests that the Court:

  i.  Award IMN its actual and exemplary damages sustained as a result of Defendants' unlawful acts;

  ii.  Award IMN its costs incurred herein, prejudgment interest, and attorneys' fees; and

  iii.  Award such further and/or alternative relief this Court deems proper.

### Jury Demand

Pursuant to Fed. Rule Civ. P. 38(b), IMN demands a trial by jury on all issues so triable.

Respectfully Submitted,

  _/s/ Craig M. McKee_____
  Craig M. McKee
  WILKINSON, GOELLER, MODESITT, WILKINSON & DRUMMY, LLP
  333 Ohio Street
  Terre Haute, IN 47807
  (812) 232-4311
  cmmckee@wilkinsonlaw.com

  L. Pahl Zinn *(Admission Pending)*
  DICKINSON WRIGHT PLLC
  500 Woodward Avenue, Ste 4000
  Detroit, MI 48226
  (313) 221-3500
  pzinn@dickinson-wright.com
  Attorneys for Plaintiff

Dated: November 19, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2018, I electronically filed the foregoing document with the Clerk of the Court using the Electronic Court Filing system which will send notification of such filing to all parties of record.

> Craig M. McKee
> WILKINSON, GOELLER, MODESITT,
> WILKINSON & DRUMMY, LLP
> 333 Ohio Street
> Terre Haute, IN 47807
> (812) 232-4311
> cmmckee@wilkinsonlaw.com
>
> L. Pahl Zinn *(Admission Pending)*
> DICKINSON WRIGHT PLLC
> 500 Woodward Avenue, Ste 4000
> Detroit, MI 48226
> (313) 221-3500
> pzinn@dickinson-wright.com
> Attorneys for Plaintiff

DETROIT 39450-1 1480943v2